**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
AL-CAPRI DAMANI,              :      Civil Action No. 04-4328 (JAG)
                              :
           Petitioner,        :
                              :
        v.                    :           O P I N I O N
                              :
KATHRYN MACFARLAND,           :
                              :
           Respondent.        :
_____:
```

**APPEARANCES:**

Al-Capri Damani, Pro Se
#214593
Southwoods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Gary A. Thomas
Assistant Prosecutor
Essex County Prosecutor's Office
Essex County Courts Bldg.
Newark, NJ 07102
Attorney for Respondent

**GREENAWAY, JR., District Judge**

    Petitioner, Al-Capri Damani, filed the within petition for a
Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondent
has filed an Answer.  The Court has considered all submissions.
For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case are recounted below and this Court,

affording the state court's factual determinations the

appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply

reproduce the Appellate Division's factual recitation:

> The victim of the crime was Anton Pierre Shelley.
> The witness on whom the State relied, John Vaughan,
> testified that while he was smoking marijuana and
> drinking beer with Shelley and Jerrold Powell near 201
> Seymour Avenue in Newark around 11:00 p.m. on November
> 14, 1984, the defendant and another person approached
> Shelley, grabbed his radio and then shot him in the
> head.

> The defendant's only witness was Jerrold Powell.
> Powell stated that approximately 8:00 or 8:30 p.m. on
> the evening of November 14, 1984, he and defendant were
> drinking beer in the area of Seymour Avenue.  Shelley
> was then 40 or 50 feet away when Powell saw a car pull
> up from which three people jumped out, demanded
> Shelley's radio, and then shot him.  Powell and
> defendant then fled from the scene.

> According to the affidavits of Washington and
> Walker, the newly discovered witnesses, their
> involvement was prompted by their sister, Gloria
> Walker, who reminded them, after reading in the
> newspapers about defendant's trial, that they were with
> defendant on the night of the murder.  Their
> affidavits, one dated October 22 and the other October
> 23, 1985, provide a still different scenario from that
> given by Vaughan and Powell.  Apart from the fact that
> Walker places the time of the event at around 10:00
> p.m. and Jimmy Washington at between 7:00 and 9:00
> p.m., their versions are largely identical.  They say
> that they were sitting on a flight of steps leading
> down from Hedden Terrace to a parking lot smoking
> marijuana when they were joined by defendant who was
> previously unknown to them.  They shared their
> marijuana with defendant and as they spoke they saw
> Shelley walk into an adjoining lot from Seymour Avenue.

2

Shortly after, two other men came down the steps, sat
at the bottom of the stairs from about five minutes and
then walked on.  About three to five minutes later
Washington and Walker heard a shot, whereupon they and
defendant ran up the stairs looked over the fence from
where they could see the same two men grabbing
Shelley's radio and shooting him.  They explained their
failure to bring this information to the authorities
sooner by saying that their other brother advised them
to remain silent.

(State v. Murphy,[1] A-3758-88T5 (Jan. 16, 1990), pp. 2-3).

2.   Procedural History

On April 3, 1985, an Essex County Grand Jury indicted
Petitioner on five counts, including: murder, contrary to N.J.
STAT. ANN. § 2C:11-3A(1) (count one); felony murder, contrary to
N.J. STAT. ANN. § 2C:11-3A(3) (count two); possession of a handgun
without a permit, contrary to N.J. STAT. ANN. § 2C:39-5B (count
three); possession of a weapon for an unlawful purpose, contrary
to N.J. STAT. ANN. § 2C:39-4a (count four); and robbery, contrary
to N.J. STAT. ANN. § 2C:15-1 (count five).

From September 23 through September 26, 1985, Petitioner was
tried by a jury in Superior Court of New Jersey, Law Division,
Essex County ("Law Division").  The jury found the petitioner
guilty on counts one, two, three, and five, and not guilty on
count four.  On December 6, 1985, the trial court considered
Petitioner's motion for a new trial, but reserved decision.

---

[1]   Petitioner also goes by the name of "Freddie Murphy, Jr."

3

On July 20, 1988, Petitioner was sentenced to an aggregate sentence of 30 years imprisonment.

On February 2, 1989, the trial court granted Petitioner's motion for a new trial.  On January 16, 1990, the Appellate Division reversed the trial court's ruling and reinstated the conviction.  However, on June 12, 1990, the New Jersey Supreme Court granted Petitioner's petition for certification, reversed summarily the Appellate Division's decision, and remanded the matter to the Law Division for a new hearing on the motion for a new trial.

On August 3, 1990, the trial court conducted the new hearing and denied Petitioner's motion.  The denial was affirmed by the Appellate Division on December 18, 1992.

On November 25, 1996, Petitioner filed a petition for post-conviction relief ("PCR") in the trial court.  Counsel filed a petition on Petitioner's behalf on November 16, 1999.  On October 5, 2001, the petition was denied.  On May 21, 2003, the Appellate Division affirmed the denial of the PCR petition.  On September 17, 2003, Petitioner's petition for certification to the New Jersey Supreme Court was denied.

The instant petition was filed on September 2, 2004.  On December 2, 2004, Petitioner was advised of his rights, pursuant

to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On July 20, 2005, Respondent filed an Answer and the state court record.[2]

**DISCUSSION**

**A.   Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1.   Ineffective assistance of trial counsel.
2.   Ineffective assistance of appellate counsel.
3.   Verdict was against the weight of the evidence.
4.   Prosecutorial Misconduct.
5.   Denial of a Speedy Trial.

See Petition for Writ of Habeas Corpus, ¶ 12.[3]

Petitioner has raised the instant claims before the New Jersey state courts.

---

[2]   Respondent asserts the affirmative defense that the instant petition is time-barred.  However, Petitioner's conviction became final in 1992 or 1993.  Because Petitioner's conviction became final before April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act, the petitioner had one year, or until April 23, 1997, to file his petition for a writ of habeas corpus.  See Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 617 (3d Cir. 1998).  The statute of limitations is statutorily tolled during pendency of post-conviction relief proceedings.  See 28 U.S.C. § 2244(d)(2).  In this case, Petitioner's post-conviction relief proceedings were pending from November 25, 1996, when his petition was filed, until September 17, 2003, when the New Jersey Supreme Court denied his petition for certification.  The instant petition was filed within one-year of September 17, 2003, and is therefore, timely.

[3]   Petitioner cites to Grounds 6 and 7 in his habeas petition.  (Pet., p. 6).  He states that these grounds and supporting facts are attached to his petition.  However, the pages referred to by Petitioner are not attached to the Court's copy of the Petition.

B.   **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's

7

application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Pursuant to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to the evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on

habeas review." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

## C. <u>Petitioner's Claims Regarding Ineffective Assistance of Counsel (Grounds 1 and 2).</u>

Petitioner claims that his trial counsel was ineffective because counsel put a witness on the stand whose testimony hurt petitioner more than helped; failed to investigate properly the Walker/Washington version of events; failed to file pretrial motions, including challenging the out-of-court identification of petitioner by the State's sole witness; failed to challenge the verdict; and allowed the defense witness to testify with correctional officers present in the courtroom.  Petitioner

argues that appellate counsel was ineffective for failing to raise certain issues on appeal.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense."  Id. at 687.

In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because

of the difficulties inherent in making the evaluation,
a court must indulge a strong presumption that
counsel's conduct falls within the wide range of
reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the
circumstances, the challenged action "might be
considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519
U.S. 1020 (1996).

The Supreme Court has held that the Due Process Clause of
the Fourteenth Amendment guarantees a defendant the effective
assistance of counsel on a first direct appeal as of right.
Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective
assistance of appellate counsel are evaluated under the
Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d
Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa.
July 26, 2004).  Appellate counsel does not have a duty to
advance every nonfrivolous argument that could be made, see Jones
v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may
establish that appellate counsel was constitutionally ineffective
"if he shows that counsel omitted significant and obvious issues
while pursuing issues that were clearly and significantly
weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate
counsel was ineffective, a petitioner must show not only that
counsel's performance fell below an objective standard of

11

reasonableness, but also that there was a reasonable probability,
but for counsel's deficiency in raising the arguments on appeal,
that the conviction would have been reversed on appeal.  See
Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert.
dismissed, 527 U.S. 1050 (1999).

Petitioner raised the issue of ineffective counsel in the
state courts in his petition for post-conviction relief ("PCR").
The Law Division, citing Strickland, found that Petitioner had
not made a prima facie showing of ineffective assistance to
warrant an evidentiary hearing and denied Petitioner's PCR
petition.  The judge found:

> . . . In essence, petitioner's counsel's demonstrated
> ability at trial more than satisfies the minimum
> reasonable standard for effective assistance of
> counsel.  As the Appellate Division found, petitioner's
> trial counsel made ample investigations and made
> logical strategical decisions. ...  The disputed
> decisions made by counsel at trial were clearly
> tactical, and in no way inadequate or below a level of
> reasonable competence.  Accordingly, petitioner has
> failed to establish deficiency of trial counsel, the
> first prong under State v. Strickland [sic].
>
> In addition, the impact of petitioner's claims of
> error was not prejudicial, either individually or in
> the aggregate, to the trial's outcome.  Therefore, even
> if, arguendo, petitioner's trial counsel's performance
> was deficient, he has failed to demonstrate a
> reasonable likelihood of succeeding on the second prong
> of the Strickland test.
>
>                          ***
>
> [As to appellate counsel claims]
>      In sum, petitioner has failed to demonstrate by a
> preponderance of the evidence that had appellate
> counsel raised the issues Petitioner now asserts, the

> results of the appeal would have been different.
> Prejudice must be proved, and this the petitioner has
> failed to do.  The record does not support or even give
> rise to a fair inference that counsel's performance was
> in any way inadequate or below a level of reasonable
> competence.  The impact of petitioner's claims of error
> could not have a had a prejudicial impact on the
> appeal's outcome.

See Opinion of PCR judge, dated October 3, 2001 (internal

citations omitted).  The Appellate Division affirmed the denial

of PCR, stating that the issues "are without sufficient merit to

warrant discussion in a written opinion," and affirmed

"substantially for the reasons articulated by Judge Giles in his

well-reasoned letter opinion dated October 3, 2001."  See State

v. Damoni [sic] a/k/a Freddie Murphy, Jr., A-4536-01T4 (May 21,

2003), at p. 6.  The Appellate Division block quoted a large

portion of the PCR court's written opinion in its decision.

After a thorough review of the state court record, this

Court agrees that Petitioner has not demonstrated that either

trial or appellate counsel were ineffective under the Strickland

standard.  Even had counsel performed as desired by Petitioner,

the jury was required to make a credibility determination.  For

example, had counsel discovered the Walker/Washington version of

events, which is unlikely since both Walker and Washington stated

that they decided to remain silent upon advice from someone, the

Walker/Washington version of events was not the same as

Petitioner's version of events.  Thus, the Walker/Washington

version of events could not have swayed the jury to find Petitioner more credible.

Likewise, the fact that correctional officers were located in the courtroom and counsel did not object does not render counsel ineffective.  As Respondent points out, four years after trial the trial court noted that the correctional officers may have had "shoulder patches" on their clothing.  Petitioner offers no facts indicating that the officers' presence in the courtroom swayed the jury.  The failure of counsel to object to the officers' presence in the courtroom does not rise to the level of ineffectiveness.

As to the argument that counsel did not challenge the out-of-court identification by the State's eyewitness, this Court notes that a review of the record reveals that Petitioner's counsel vigorously cross-examined the witness regarding his state of mind at the time of the incident, and pointed out inconsistencies in the witness's testimony during his summation.

Therefore, Petitioner has failed to demonstrate that counsel's performance was deficient, or that the results of the trial would have been different.  The state courts applied the correct Strickland standard to Petitioner's claims and reasonably applied the facts.  Petitioner has not shown, as is required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's ineffective assistance of counsel claims are denied.

**D.   Verdict Against Weight of Evidence (Ground 3).**

Petitioner claims that the verdict was against the weight of the evidence.  Petitioner raised this claim in his PCR petition. The trial judge denied the claim as procedurally barred, stating:

> As to the verdict [being] against the weight of the evidence, petitioner claims that John Vaughn was the prosecution's only witness who gave many inconsistent statements, upon which the prosecution exclusively relied.  Furthermore, the petitioner claims that there was no other evidence to connect [him] with the crime, [and] therefore the judgment should be set aside.  Issues addressed to the weight of the evidence may be raised only by direct appeal and may not be raised by a Post Conviction Relief proceeding whether or not a direct appeal was taken. . . .  For these reasons, Petitioner's application as to this issue must be denied.

See Opinion of PCR judge dated October 3, 2001 (internal citations omitted).  The Appellate Division affirmed the denial for the reasons set forth by the PCR judge.

The Court of Appeals for the Third Circuit has explained:

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual

15

"prejudice" as a result of the alleged violation of the
federal law or unless the applicant demonstrates that
failure to consider the claim will result in a
fundamental "miscarriage of justice."

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002)(internal

citation omitted).  To establish cause, a petitioner must

demonstrate some objective factor external to the defense that

prevented compliance with the state's procedural requirements.

Coleman v. Thompson, 501 U.S. at 753.  To establish a fundamental

miscarriage of justice, a petitioner must demonstrate that he is

actually innocent of the crime, McCleskey v. Zant, 499 U.S. 467,

494 (1991), typically by presenting new evidence of innocence,

Schlup v. Delo, 513 U.S. 298, 316 (1995).

In this case, Petitioner has failed to allege any cause for

his procedural default in state court or any fundamental

miscarriage of justice that would result from failure to consider

his claims, thus this Court cannot grant relief.

Alternatively, a claim that the jury's verdict was against

the weight of the evidence is "essentially a matter of state law,

and does not raise a federal constitutional question unless the

record is completely devoid of evidentiary support in violation

of Petitioner's due process."  Douglas v. Hendricks, 236 F.

Supp.2d 412, 435-36 (D.N.J. 2002)(Walls, J.)(citation omitted).

Only where, "after viewing the evidence in the light most

favorable to the prosecution, [no] rational trier of fact could

have found the essential elements of the crime beyond a

16

reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

In this case, there was evidentiary support for the verdicts.  The identification evidence was placed before the jury for the jury to assess the reliability of that evidence.  Both the strong and weak points of the identifications were presented to the jury.  The fact that the jury decided to accept the State's evidence and argument and find that the identification evidence pointed to Petitioner as the perpetrator does not rise to the level of a constitutional due process violation.  Therefore, this claim shall be denied.

**E.   Prosecutorial Misconduct (Ground 4).**

Petitioner argues that the prosecutor "threw the full weight of the State behind a liar," made improper reference to the petitioner throughout the trial, and gave credibility to the State's only eyewitness by suggesting to the jury that the witness did not make a "deal" in exchange for his testimony.  Petitioner states that years later, it became clear that the

witness had made a deal.  Petitioner argues that the prosecutor, therefore, presented false testimony to the jury.

Petitioner raised this argument in his PCR petition.  The PCR judge denied the claim regarding the prosecutor's alleged presentation of perjured testimony, finding that Petitioner did not present evidence that the prosecutor had knowledge of the alleged false statement.  <u>See</u> Opinion of PCR judge, dated October 3, 2001.

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).  If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial.  <u>See id</u>. at 220.  "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." <u>United States v. Young</u>, 470 U.S. 1, 11 (1985).

Thus, where a prosecutor's conduct during trial is challenged in habeas, "[t]he relevant question is whether the prosecutor's [conduct] 'so infected the trial with unfairness as

18

to make the resulting conviction a denial of due process.'"
Darden, 477 U.S. at 181 (quoting Donnelly, supra).  "Supreme
Court precedent counsels that the reviewing court must examine
the prosecutor's offensive actions in context and in light of the
entire trial, assessing the severity of the conduct, the effect
of the curative instructions, and the quantum of evidence against
the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir.
2001).

In this case, the trial judge charged the jury:

> If counsel, in the course of their summations or any
> other time in the course of this trial, should have
> addressed the Court and or the Jury and recalled as a
> fact something which again is not in accord with what
> you recall as to the facts, you're not bound by the
> recollection of counsel.  You should disregard said
> recollections if they are not in accord with your
> recollection because your recollection controls.
> Likewise, Members of the Jury, any opinions that have
> been expressed by the State, by the Assistant
> Prosecutor as to the guilt of the defendant to any of
> the charges that are contained in this indictment are,
> of course, not binding on you.  Likewise, any opinions
> expressed by defense counsel as to the innocence of the
> defendant as to any of the charges that are contained
> in this indictment, are of course not binding upon you.

See Transcript, dated September 25, 1985, pp. 5-6.

In this case, Petitioner has not demonstrated that the
prosecutor's comments warrant habeas relief.  Further,
Petitioner's assertion that the State's sole eyewitness was a
liar cannot be overcome based on the jury's assessment of the
credibility of the witness and its determination, by virtue of
Petitioner's conviction, that the State witness's version of the

19

events was more credible than Petitioner's version.  Petitioner
has not demonstrated prosecutorial misconduct that rises to the
level of a denial of due process or which would render his
conviction unfair.  Any comments by the prosecutor as to the
witness's credibility were cured by the trial judge's instruction
to the jury that they are not bound by the prosecutor's opinions.

Thus, Petitioner has not shown, as is required by 28 U.S.C.
§ 2254(d), that the actions of the state courts "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  This ground for a writ of habeas corpus is denied.

## F.  Speedy Trial (Ground 5).

Petitioner states that he was denied a speedy trial in
violation of the Sixth Amendment to the Constitution of the
United States.  Petitioner states that he was convicted in
September 1985, but was not sentenced until almost three years
later in July 1988.

Petitioner raised this argument in his PCR petition.  The
PCR judge denied the claim as procedurally barred.  As noted in
this Opinion, Section D, page 15, in order for this Court to
decide this claim on the merits, Petitioner must demonstrate

cause and prejudice to excuse the default, or that a miscarriage of justice will occur if the claim is not adjudicated on the merits.  Petitioner has shown neither.

Alternatively, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four guidelines to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant.  See id. at 530; see also United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998), cert. denied, 525 U.S. 1085 (1999).

The Court of Appeals for the Third Circuit has concluded that the Speedy Trial Clause applies through the sentencing phase.  See Heiser v. Ryan, 15 F.3d 299, 06 (3d Cir. 1994)(citing Burkett v. Cunningham, 826 F.2d 1208, 1220 (3d Cir. 1987)).  The court stated that there have been "rare situations" where the federal courts "have been obliged to grant the writ because of excessive delay in state-post conviction proceedings, usually either in sentencing or hearing the defendant's appeal."  Id., at 305-06.  The court further noted "we have previously recognized that a certain amount of anxiety is bound to accompany criminal

21

charges, and only unusual or specific problems of personal prejudice will satisfy the Barker test [in post-conviction situations]." Id. at 305.

For example, the court cited a Second Circuit case in which appointed counsel delayed six years in perfecting the defendant's appeal of a nine-year-to-life sentence. See id. at 306 (citing Simmons v. Reynolds, 898 F.2d 865 (2d Cir. 1990)). Because the appeal was actually heard and the conviction affirmed, and defendant was represented by competent counsel on appeal, "'any prejudice he may have suffered from the delay did not harm his ability to get a fair, albeit late, review of his conviction.'" Id. (quoting Simmons, 898 F.2d at 869).

In the instant case, Petitioner has not demonstrated any of the four prongs of Barker. First, Petitioner failed to raise this issue for eleven years after the delay, without explanation. Second, Petitioner offers no facts establishing that he was prejudiced by the delay, except to say that "[n]o appellate procedure on direct appeal was ever pursued beyond the filing of a notice of appeal and a motion to stay or dismiss with prejudice." (Petition, p. 6.3). However, Petitioner was not denied the opportunity to appeal due to the delay in sentencing, as the time for appeal under New Jersey state law begins to run 45 days after final judgment. N.J. Cᴛ. R. 2:4-1; see also N.J.

22

CT. R. 2:4-3(c)(tolling time to appeal in criminal actions upon filing motion for a new trial).

Thus, Petitioner has not shown, as is required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  This ground for a writ of habeas corpus is denied.

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  This Court finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as is required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


 S/Joseph A. Greenaway, Jr.          
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: April 4, 2006

23